Ready when you are, Mr. Haffold. Thank you, Your Honors. May it please the Court, I'm Chad Haffold representing Ms. Andrews in her appeal of the ALJ's, the Administrative Law Judge's, denial of her disability insurance benefits and SSI claims. This is a de novo review of the ALJ decision. A myriad of errors flowed for the Administrative Law Judge treating Ms. Andrews' conditions and symptoms as static. And whereas she does have baseline anxiety, her primary complaint allegation is that she has debilitating panic at times where she cannot leave the home, or when she leaves the home she'll have to return back because of the panic disorder. Same with the physical conditions. These are conditions that flare relatively rarely. They're pretty good control, but that's the baseline of a condition. We see here the judge formulated an RFC based upon references to the record of how she was functioning in her home, doing activities day-to-day living, and some of the days where she was able to leave her home and go to appointments on her good days. The RFC ultimately ended up being a light RFC, unskilled, away from the public. Now this is very interesting because during the period Ms. Andrews attempted a part-time job as a motel housekeeper. That job is light, unskilled, and away from the public. This is a rare opportunity in a social security case we get a step away from hypotheticals and what-ifs and anything else. We have a real-world example that the claimant could not perform a job consistent with the ALJ's RFC. She worked only five hours a day, three days a week, and yet she testified she had to miss at least one about one day per week due to her panic anxiety and sometimes had to leave home early, couldn't even finish her five-hour shift due to the anxiety. This is consistent with her testimony and the testimony of her treating providers who despite what the judge says that these disabling opinions, disabling testimony, it's not that they said she can't work or she alleges she can't function, it's just that at time she's not able to function. As a psychiatric nurse practitioner Holmes noted, Ms. Andrews doesn't have any cognitive deficits but she's unable to keep a specific schedule as she cannot predict when the anxiety or panic would flare up. Now the treatment of the treating source opinions was erroneous at numerous bases. Nurse Siefkin first, the ALJ said this particular examination in January 2019 is not consistent with her limitations. However, if we look at page 535, the top page of the report, records reviewed, Nurse Siefkin lists her own treatment notes from 2012 to 2019. This wasn't a one-time examination. She was basing on her seven years of experience where she notes worsening anxiety from 2012. She also notes the primary impairment was difficulty engaging in activities outside of her home. Now Nurse Siefkin had a lot of mild and moderate limitations here. A lot of these questions have things like, you know, understanding very short instructions, being aware of normal hazards, setting realistic goals. So of course these were mild limitations. What she did find was a marked level limitation in the ability to complete a normal workday and work without interruptions from psychologically based symptoms. If I can interrupt, a problem, maybe the problem I have about this case, is the mistake of the ALJ in confusing, or maybe I should say combining, the Siefkin evaluation with the Combs evaluation. He thinks those are evaluations by the same person and because one is not very favorable to the claimant and the other one's much favorable to the claimant, he says, well these are so inconsistent I'm not going to pay any attention to them. So what happens once we correct that error and we look at the Siefkin evaluation, which by and large I have to say is not all that favorable to your client, but the Combs evaluation is very favorable to her. What do I do with the fact that the ALJ makes that mistake, entirely discounts the Combs evaluation because he thinks it's the same as Siefkin and they're so inconsistent. Well, two things. One, I don't know if I agree that it's inconsistent as much as the forms were completely inconsistent in what they asked. I mean, the mark level limitation in Nurse Siefkin is missing days of work and having psychological interruptions during a workday. That's what Nurse Combs, she also put marked limitations, but a marked limitation of persistence and saying she missed four more days of work per month and being off task 30%. So it is harmful error in the fact that, you know, we have a nine-year period where a psychiatric nurse practitioner treating her and there's two of them and the judge doesn't even, you know, consider that the second one, Nurse Combs, also had this opinion during this relevant time period and those would bolster the consistency of each other that there was this, the main difficulty was attendance, time off task. Now, whereas Nurse Siefkin didn't put it. Just to make sure I understand your answer, you're saying that the Siefkin evaluation and the Combs evaluation were essentially the same or similar? Not the same because the forms are so different. I mean, the questions were so different that Nurse Siefkin's form had a lot more questions about very basic work activities. They didn't ask what she meant by marked level limitation and the, you know, interruptions from psychologically-based symptoms. Whereas we see from Nurse Combs, which is, I think, is consistent marked level limitation in that area, was asked, well, how many days are they going to miss? How much time off task? And she answered those. These were four times the amount of off task and attendance that the vocation expert testified to be allowed in competitive employment. Yet the ALJ never said that, hey, a marked level limitation and, you know, interruptions from psychologically-based symptoms would result in less than 7% time off task or it'd only be this many absences. The judge has completely left it open. So I'd say that Nurse Combs actually fills in the blanks of what this means, a marked level limitation. They both are consistent that this is the primary impairment. She has a cognitive ability. Can I interject here for a second because my understanding of our job as a reviewing court is not to go back and read all these things, but to actually assess whether the ALJ provided sufficient reasons for discounting those opinions, right? And we can't just substitute our own judgment. What we're really evaluating are the reasons that the ALJ provided for discounting those opinions. Now, one of those reasons, I think, is concededly error, right? He confused these as he thought they were the same person. They weren't. It's error. Then the question is whether that was harmful error. My understanding is that the ALJ provided some additional reasons for discounting each of those opinions. And there's a question in my mind of whether those reasons stand independently from the error. And if they do, whether they are sufficient under our standard of review. Can you address that question? Yes. As far as being consistent with the record, as I noted, the judge will point off activities of daily living and sometimes going to appointments based on anxiety as inconsistent. That's not inconsistent with her testimony whatsoever. The opinion is missing days of work. I think it's really telling that at the nurse-suits-kin appointment, she had anxious mood and affect. This is her treating provider. She's known for seven years. She's in a one-in-one room with a mental health professional and still exhibiting anxiety. We see the more exacerbations later. So it's not inconsistent with the record once you look at what the actual allegations are. Two is conservative treatment was the other thing. Ms. Andrews is on the maximum dosage of Xanax. She says before she has to go to an appointment, she has to worry. She has trouble sleeping, has tried to relax the day before, takes an extra dosage of medication to leave the home. If she has a panic attack, she has to come home, take more medications, lie down, so she's better. She's gone to the hospital with chest pain, had to have it checked out, lightheadedness, dizziness, nausea. It was anxiety. You know, she has to treat this with anxiety laying at home. This is not conservative care. It's nine years of a psychiatric nurse practitioner routinely meeting and on the highest dosage of anxiety medications as possible. Psychiatric hospitalizations, if that's what ALJ is trying to find is required to show that absence from work is not really relevant in this period because Ms. Andrews can return to baseline. She needs to go home. The records where it says she's doing better, she reports the nearest homes in 2020. She says my anxiety is under a little better control, but I also haven't been leaving the house much. This is during the COVID pandemic. So we see that she does do better inside her home. She doesn't do, she does have a lot more panic anxiety outside the home. That's consistent with the opinions and so the ALJ's reasons for being inconsistent with the records and also that it's conservative care are not founded. There is not a reasonable interpretation of the record. Exactly, it's just the opposite. Ms. Andrews, if anything, she's consistently inconsistent with her sentimentology and there's no real control when she leaves the home of when she's going to have these panic attacks. And what about supported? I believe the ALJ also said that the opinions were not supported. I think mostly because they were forms, right, and there weren't necessarily reasons provided. Well, the reasons were provided. I mean, we see that they said that the trouble was the frequency of the panic attacks was the main thing and we see in the record panic attacks going to the ER for heart problems, testifying that, you know, does better when she stays at home, having to leave work early, missing days of work. The judge never challenged that she had to miss days of work at that job that was away from the public. It was never challenged. It was not challenged that she had to leave early from that job when she was attempting it. And also, of course, the ALJ, as far as support, she didn't realize that another, the other treating provider also had a similar opinion to have to miss days, Nurse Coombs, because she attributed it back to Nurse Siefkien again. Okay, thank you. I'll give you a minute on rebuttal. Thank you. Morning. May it please the Court, Jeff Staples here for the Commissioner, who asks that you affirm the District Court's judgment because substantial evidence supports the ALJ's findings of fact. So, I think it's conceded by both sides that the ALJ made a clear error in believing that the reports of two different experts were one, the report of a single expert, and while there might still be independent reasons for discounting both reports, some of which the ALJ, in effect, alluded to, albeit under the guise of this being one report, wasn't all that hugely colored by the ALJ's basic opinion, quote, her opinions, because he think it's one person, her opinions were drastically inconsistent with each other, and isn't it reasonable to assume that that very much affected how the ALJ looked at the other difficulties that you might otherwise rely on to say that it's harmless error, and why shouldn't we then just send it back and see what the ALJ does once that error is corrected? Well, first of all, I think Judge Sung pointed out that this Court does a harmless error analysis by seeing what's left over. Oh, I agree, but what I'm saying is, does that mean we have to disregard the fact that the ALJ felt so strongly, used the word drastically inconsistent, about that inconsistency that was, in effect, based on the ALJ's misinterpretation, that it inevitably was likely to have affected all the other findings? I don't think that you can, I don't think you see that infection in the remaining findings. So, the other things that the ALJ said, you know, yes, the ALJ said they're drastically inconsistent with each other, that's one sentence. The rest of that paragraph, though, the ALJ goes through and said that each of these opinions are unsupported, and you can see that by looking at the opinions, you know, as we've been talking about, the form doesn't really, you know, there's a section for comments or for explanation, and both Nurse Combs and Nurse Saif can really refer primarily to Andrews' own statements about the frequency of her panic attacks and things like that, rather than object of medical evidence, as the regulations require. Then the ALJ... Can I ask a version of Judge Rakoff's question? I'm looking at the Combs evaluation, and she's got a sort of a checklist, and she has a choice up to five, five being severely limited, it's the most limited choice that she has. And Combs checks as severely limited the following, ability to work a normal work week, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get along with co-workers, ability to travel in familiar places, use public transportation, and then markedly limited to four, perform activities within a schedule, and work in coordination. If those evaluations are credited, is she disabled? I think so. Yeah, I think so too. I think if... So, how do we know that if the ALJ had understood that these were from Combs rather than Seifert, and had therefore not discounted them because they were so internally inconsistent from the same person, how do we know that the ALJ would have discounted this? Well, I think one thing that... One reason that it's a harmless error to conflate the author is that the inconsistency between the two opinions, while in this case made under the mistaken assumption that it was from the same person, why are they making such inconsistent opinions? Inconsistency between two different opinions is itself part of the consideration that the ALJ is... That's not an answer to my question. Sorry, Your Honor. You conceded, and I think I agree with you, that if Ms. Combs' evaluations were credited, she's disabled. Yes. How do we know that if the ALJ had understood that Combs was a freestanding person, that he would have discounted Combs? Because I think you look at the balance of the analysis that the ALJ provided, and we ask ourselves, does this analysis apply equally well to both opinions that the ALJ is discussing? That's the question the ALJ would ask of himself, or herself, I can't remember the gender, but I'm not sure that's for me to answer. I think it's for the ALJ to answer. Well, I think that is for you to answer. I think that's for this Court to answer, and that's the way we do harmless error analysis. We see what remains, right, as Judge Sung was pointing out. But you've just conceded that if Combs is credited, she wins. Yes. So the question is, would the ALJ have credited her? And I don't think you can say the ALJ would have credited either one, because the remaining reasons for finding those opinions unpersuasive are themselves supported by substantial evidence. And what remaining reasons are you speaking of? The supportability of both opinions, which the ALJ discussed and explained that the opinions were not well supported by objective medical evidence. Then also the consistency between those opinions and the largely normal mental status examination findings throughout the record. If the ALJ had done that and said that, I would sustain. My question is whether the ALJ would have concluded that. So I think, I mean, could we get a better ALJ decision by remanding? Of course. I mean, that's always the case. But, you know, if the ALJ had just broken that paragraph into two paragraphs, I think it could have been the same thing. And so I think... What do you mean broken into two paragraphs? So if you had had one paragraph for Combs and one paragraph for Siefkin and understood that they were from different people. And credited Combs. Well, I don't think the ALJ did. The ALJ looked at Combs' opinion. But entirely discredited. Yes, but not only based on the fact that it was a mistake about who was the author. So if the mistake, if the whole... Yeah, but the question is, you're right that that wasn't the only reason. But it was so strongly asserted that it sort of strongly suggests that it colored the ALJ's interpretation of everything else that followed. Because, in effect, the ALJ is saying, this is, this opinion is worthless because it's got drastically inconsistent stuff. So why should I even... I'm going to go on anyway and point out some problems. But, my gosh, this is real nonsense. And that was all wrong. So I think that the supportability and consistency stand alone. I don't really see how those are tainted by the confusion about the author. I mean, an opinion is supported or it's not. It doesn't really matter who the author of the opinion is. Well, I guess one way to look at this would be there's levels of supportability, right? And something's just wholly unsupported that would, in and of itself, be an independent reason to discount an opinion. Yes. Here we have, you know, supportability, consistency with the medical record, and then an erroneous reason, which would be inconsistency with another opinion, right? I think the question is, how do we know that the level of insupportability that the ALJ found or the level of inconsistency of the record was high enough that, even absent the error, they would have still discounted, right? Because there's a world in which the level of supportability and consistency would not have been enough on its own. And there's a world in which it is enough on its own. And I think that the question is, how do we know which world we're in? I think you can, I think by looking at the opinions themselves and taking the ALJ's reasoning for finding both of them unpersuasive. So, you know, as you were saying, the level of supportability. What is the level of supportability of these opinions? I think it's pretty low. I think they're really, you know, they're not served by the forms that they filled out, right? The forms are not providing a good space to elaborate, delineate the object of medical evidence that's supporting... But there's a little bit of narrative at the end of Combs. There is a narrative, and... Combs writes, and this is now narrative, she writes, although cognitively Miss Andrews has few limitations, her anxiety and panic would make working very difficult if not impossible. She is unable to keep a specific schedule, as she cannot predict when the anxiety or panic would flare up. So we do have a little bit of a narrative. Yes, Your Honor, and that is an explanation. But is that an explanation that's based in object of medical evidence? Or is it an explanation that's based in Andrews' own statements about her inability to keep a schedule? And I think the ALJ fairly decided that it was the latter. I see I'm out of time. I'd be happy to keep answering questions if you have any further, but we'd ask that you affirm. Thank you very much. All right. I don't have much time. You might want to wait because your video screen is still rising. You let me know. Okay. Go ahead. All right. Thank you. I'll just briefly respond here. As far as referring to client statements and not objective evidence, that's a very different argument. We have a nine-year treating length of the two opinions. Now, as far as Nurse Combs on her own, if the judge felt that was Nurse Hifkin's opinion, they wouldn't have access to Nurse Combs' treatment notes. We see in Nurse Combs' treatment notes, she was 706. Claim was noted to experience anxiety on a daily basis. March 2020, she suffered panic, high anxiety, with crowds and grocery shopping causing her to feel like she has to rush, resulting in frequent leaving the store halfway through shopping, particularly when the store is busy. 702, 773, she was put into the emergency room with chest pain for three to four days. 775, assessed with chest pain and anxiety. June 30, 2020, she's had worsening chest pain, underlying anxiety and hypertension. October, her anxiety was staying under control, but she said, I was staying home a lot. October 22, 2020, high anxiety, recent panic attack from a store, feeling warm, heart racing, nausea, equilibrium was off, like she might faint. 885, 889, 892. These are all recent records by Nurse Combs showing that they're having ongoing anxiety from someone they know well. If the judge wasn't tying these notes to that opinion, that would definitely throw off her being able to reasonably assess the record and the opinion evidence. I would also just, the last thing I'd state is a lot of the notation stating for that she's functioning well was cited in the commissioner's brief, noting 668, she was improving and she was fine with her anxiety and identifying triggers. It noted that she was having a good summer until she left her home to go to a pool party. She was having heart racing, nausea, dizziness, had to get an EKG that showed it was normal. She's back to three Xanax per day. They noted CARF-39, no difficulty relaxing. Well, the full sentence is no difficulty relaxing when she is by herself. That's a very important piece of information to leave out in this particular case. CARF-704, she had generalized anxiety disorder. That's her baseline, but the very next sentence says, accelerated heart rate, shortness of breath, chest pain, feeling depersonalization and fear of loss of control. She meets the criteria for generalized anxiety disorder and panic disorder. So there's just a lot of bits and pieces of information. And when you look at it in the full context, you see someone who can function well at home and those things are cited by the judge, but they leave out the most important parts about the anxiety and the panic attacks at times when she leaves her home. Having two nurse practitioners, you have an uninterrupted nine year period. We understand your point. Thank you. All right. Thank you. Thank you, counsel for your arguments and this matter is submitted.
judges: FLETCHER, SUNG, Rakoff